# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | Case No. 4:04-cr-106(31) |
| v. | § | Judge Mazzant |
| | § | |
| DUFORD LEE MITCHELL, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Dkt. #1737). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On July 15, 2004, a Grand Jury indicted Defendant with Conspiracy to Possess with Intent to Distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 846 (Count 1) (Dkt. #1 at pp. 2–5). On March 10, 2005, a Grand Jury returned a superseding Indictment, which indicted Defendant with Possession of a Firearm in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c) (Count 2) (Dkt. #802). Defendant proceeded to a jury trial. The Jury found Defendant guilty of both Counts on September 8, 2005 (Dkt. #1075).

In accordance with the jury's finding, the Probation Office determined that Mitchell's base offense level was 34 under U.S.S.G. § 2D1.1 (Dkt. #1161 at p. 7). Furthermore, Mitchell was found to have been an organizer or leader of the conspiracy based on his role in the offense, and was assessed an additional three levels (Dkt. #1161 at p. 7). Additionally, before the trial started Mitchell assaulted a witness who was planning to testify against him, which resulted in the

assessment of an additional two levels for obstruction of justice (Dkt. #1161 at p. 7). After all enhancements, Mitchell's total offense level was found to be forty-one (Dkt. #1161 at p. 26). Mitchell's extensive criminal history put him in criminal history category VI (Dkt. #1161 at p. 26). Based on a total offense level 41/VI, Mitchell's guideline range was 360 months to life for Count 1 and 60 months for Count 2 to run consecutively to Count 1 (Dkt. #1161 at p. 26). At the sentencing hearing on February 16, 2006, the Court imposed a 420-month term of imprisonment (360 months as to Count 1 and 60 months as to Count 2) (Dkt. #1145 at p. 2). Mitchell appealed his conviction and sentence, and the Fifth Circuit affirmed. *United States v. Mitchell*, 484 F.3d 762 (5th Cir 2007).

On May 12, 2020, Defendant filed a Motion for Resentencing pursuant to § 404 of the First Step Act, which retroactively amended the Fair Sentencing Act of 2010 (Dkt. #1710). On June 15, 2020, the Court denied Defendant's Motion, finding that Defendant's guideline range remained the same (Dkt. #1715 at p. 3). On June 29, 2020, Defendant filed a Motion for Reconsideration of his Motion for a reduced sentence pursuant to the First Step Act of 2018 (Dkt. #1716). The Court denied the Motion for Reconsideration on July 24, 2020, finding that Defendant was not eligible for a reduction (Dkt. #1718). The Court further noted that "even if [Defendant] was eligible for a reduction, the Court would not reduce his sentence." (Dkt. #1718 at p. 3).

On December 9, 2022, Defendant filed his Pro Se Motion to Reduce Sentence, identifying the disparity between his sentence and the sentences of his co-defendants as a reason for compassionate release (Dkt. #1727). On April 25, 2023, the Court denied Defendant's Motion without prejudice, explaining that Defendant's sentence was longer for three reasons: (1) Defendant proceeded to trial and was thus not given the benefit of a reduction for "acceptance of responsibility;" (2) Defendant's enhancements were unique to him because of his pre-trial

conduct; and (3) Defendant's extensive criminal history led to a much higher criminal history category than his other co-defendants (Dkt. # 1728 at pp. 9–10).

On September 13, 2024, Defendant filed this Motion based on "extraordinary and compelling" reasons, including: (1) an unusually long sentence, and (2) Defendant's individualized circumstances (Dkt. #1737). Defendant asks this Court to consider factors such as his youth at time of the offense, changes in law pertaining to youth sentences, and his rehabilitation efforts (Dkt. #1737). Defendant moves for the Court to reduce his sentence to time served (Dkt. #1737 at p. 1). At this time, Defendant has served about 228 of the 420 months of his sentence.

On October 23, 2024, the Government filed its Response to Defendant's Motion for Compassionate Release, contending that Defendant did not exhaust his administrative remedies for some of his claims, and that  Defendant's reasons were not extraordinary and compelling such that they would warrant a sentence reduction (Dkt. #1740). On November 13, 2024, Defendant filed his Reply to the Government's Response, reasserting that his circumstances qualified as extraordinary and compelling and that he met the standard for a sentence reduction (Dkt. #1745).

**LEGAL STANDARD**

**I.      18 U.S.C. § 3582(c)(1)(A)**

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

3

> (A)    the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)    extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. § 3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the

---

[1]   This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

Director of the [Bureau of Prisons]" *Wilson*, 2024 WL 4267923, at \*3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at \*4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at \*4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir.

2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule"). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (cleaned up); *see also Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up and citations omitted) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015,

---

[2]   The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III.    U.S.S.G.'s Policy Statement

### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by

medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility

must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

---

[3]  *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4]    *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5]    End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6]    *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7]    *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

(B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan.

23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D.    Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to § 1B1.1." U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.    Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release

motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among

similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

---

[8]  18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

## ANALYSIS

### I.  Defendant fails to satisfy § 3582(c)(1)(A)'s exhaustion requirement for some of his claims.

As a threshold matter, the Court first addresses the exhaustion requirement. As outlined in § 3582(c)(1)(A), "a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Wilson*, 2024 WL 426923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)).

While there is evidence that Defendant adequately exhausted his claim that § 404 of the First Step Act of 2018 produced a "gross disparity" between the sentence he received and the sentence likely to be imposed today, Defendant's motion raises claims that were not first raised in his letter to the warden (Dkt. #1737-8). As pointed out by the Government, Defendant's Motion raises claims that changes in the law as to youth sentencing constitutes an extraordinary and compelling reason (Dkt. #1737 at pp. 15–17). Likewise, Defendant's Motion raises the claim that "[t]he sentencing guidelines are now advisory rather than mandatory" (Dkt. #1737 at p. 18) (citing *Booker v. United States*, 543 U.S. 220 (2005)). As a "mandatory claim-processing rule," this Court will enforce the exhaustion requirement on these claims as they were properly raised by the Government. *See United States v. Mock*, No. 6:19-CR-00064-3, 2024 WL 5690583, at *1 (E.D. Tex. June 26, 2024) (denying defendant's motion for compassionate release on the grounds that he did not exhaust his administrative remedies), *aff'd*, No. 24-40489, 2025 WL 1325301 (5th Cir. May 7, 2025).

Following the Government's Response, Defendant sent a second letter to the warden, raising claims that the Government identified were omitted from Defendant's first letter (Dkt.

15

#1745-1 at pp. 3–5). However, exhaustion must occur before the filing of a motion for compassionate release. *See U.S. v. Garrett*, 15 F.4th 335, 340 (5th Cir. 2021) (holding that curing an exhaustion defect after filing is not procedurally proper). Thus, the First Step Act's retroactive application is the only change of law claim the Court will consider under Defendant's § 1B1.13(b)(6) argument, as it was adequately presented in his first letter to the warden (Dkt. #1737-8).

## II. Defendant does not present any "extraordinary and compelling" circumstances that warrant a sentence reduction, as required by § 3582 (c)(1)(A).

Defendant's Motion for Compassionate Release falls primarily under U.S.S.G. §§ 1B1.13(b)(5)-(6). Defendant raises two arguments in support of his request: (1) his individualized circumstances under U.S.S.G. § 1B1.13(b)(5); and (2) his unusually long sentence under U.S.S.G. § 1B1.13(b)(6) (Dkt. #1737 at pp. 9–23). The Court will begin by addressing Defendant's § 1B1.13(b)(5) argument. The Court will then proceed to address Defendant's § 1B.13(b)(6) argument. Ultimately, the Court finds that both fall flat.

### A. Defendant does not present any "extraordinary and compelling" under U.S.S.G. § 1B1.13(b)(5) similar to subsections (1)-(4) warranting a sentence reduction.

Defendant raises three primary claims he believes are extraordinary and compelling in support of his § 1B1.13(b)(5) argument. First, argues that his youth at the time of the offense supports compassionate release because youthful offenders are less morally culpable than fully mature adults (Dkt. #1737 at pp. 16–17). Next, Defendant argues that a change in law warrants a sentence reduction by specifically asserting that § 404 of the First Step Act made the Fair Sentencing Act of 2010 retroactive as applicable to his case (Dkt. #1737 at pp. 19–23). Last, he argues that his rehabilitation shows that a sentence reduction is appropriate by highlighting the

16

strides he has made during his incarceration (Dkt. #1737 at pp. 22–23). The Court will address each in turn.

### 1.    Defendant's Youth

Throughout his Motion, Defendant repeatedly states that his youth at the time of the offense should be considered an extraordinary and compelling reason to reduce his sentence (*See* Dkt. #1737). He emphasizes that the Supreme Court focuses on several factors that lessen the moral culpability of young offenders (Dkt. #1737 at pp. 16–17). Among these factors are that young people: (1) are more likely to engage in reckless behavior; (2) are more vulnerable to negative influences and outside pressures; (3) have limited control over their own environment; and (4) lack the ability to extricate themselves from horrific, crime-producing settings. *See Miller v. Alabama*, 567 U.S. 460, 471 (2012); *see also Roper v. Simmons*, 543 U.S. 551, 569 (2005). While these may certainly be reasons that young offenders are less morally culpable than fully developed adults, Defendant overlooks  that "young people," as used in *Miller* and *Roper*, refers to people under the age of eighteen. *Id.* Defendant mistakenly equates the mitigating rationale for juveniles under eighteen facing the harshest sentences with his own circumstances—he was a nineteen-year-old adult at the time and did not receive the most severe punishment (Dkt. #1737 at p. 16; Dkt. #1145).

### 2.    Change in Law

Defendant also raises arguments that several changes in law have produced a gross sentencing disparity (*See*  Dkt. #1737). However, Defendant only administratively exhausted one of those challenges, which means that the Court will only consider that one challenge. *See United States v. Taylor*, 2024 WL 150221, at *3–4 (E.D. Tex. Jan. 11, 2024) (holding that a defendant was "foreclosed from obtaining relief . . . because he has not submitted a request for compassionate release based on these specific grounds to the warden"); *United States v. Dodd*, 2020 WL 7396527,

at *2 (E.D. Tex. Dec. 17, 2020) ("to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion").

Defendant's only surviving argument is that "§ 404 of the First Step Act made the Fair Sentencing Act of 2010 retroactive" (Dkt. #1737 at pp. 19–23). However, the same section Defendant cites also provides, "a court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." The word "may" in that sentence is crucial, as it shows that relief is discretionary, not mandatory. *See United States v. Lyons*, 25 F.4th 342, 346–47 (5th Cir. 2022) (affirming that courts have discretion in considering a motion for a sentence reduction under § 404). Moreover, § 404(c) of the act provides that:

> "no court shall entertain a motion made under this section to reduce a sentence . . . if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

Notably, this Court denied Defendant's previous Motion for Reconsideration, in which Defendant raised a § 404 claim (Dkt. #1718). In denying that Motion, the Court also stated that "even if [Defendant] was eligible for a reduction, the Court would not reduce his sentence." (Dkt. #1718 at p. 3). The same remains true here. The changes in law that Defendant relies on cannot serve as an extraordinary and compelling under a § 1B1.13(b)(5) because that section specifically references circumstances "similar in gravity" to those in subsections (1)-(4). Thus, the guidelines intentionally excluded subsection (6). U.S.S.G. § 1B1.13(b)(5).

Further, § 1B1.13(c) provides that "except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." The same section provides that "if a

18

defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction . . . a change in the law . . . may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c). In other words, simply because a law has changed does not mean that there is an extraordinary and compelling reason to grant a sentence reduction. *See United States v. Scruggs*, No. 9:06-CR-24, 2022 WL 2872996, at *5 (E.D. Tex. July 20, 2022) (quoting *United States v. Ross*, No. 3:08-CR-0167, 2020 WL 3977113, at *2 (N.D. Tex. July 14, 2020)) ("a change in law alone does not rise to the level of extraordinary and compelling circumstances. If the Court were to hold otherwise, every inmate who might receive a reduced sentence today would be eligible for compassionate release . . . ."). However, if there are other extraordinary and compelling reasons in addition to a change in law, the change may be considered. As such, because no other "extraordinary and compelling" reasons warrant a reduction in Defendant's sentence, the change in law of the Fair Sentencing Act by the First Step Act is irrelevant for purposes of a § 1B1.13 (b)(5) argument.

### 3.    Defendant's Rehabilitation

Defendant points to the "great strides" he has made toward rehabilitation while incarcerated in support of his § 1B1.13(b)(5) argument (Dkt. #1737 at pp. 22–23). Defendant states that he is currently pursing his GED, has completed the Non-Residential Drug Abuse Program, and has engaged in various educational courses (Dkt. #1745 at p. 8). Nonetheless, over his twenty years incarcerated, Defendant has incurred over *fifty* disciplinary infractions (Dkt. #1740-1). Several of these infractions involved violence toward other inmates and staff, possession of dangerous weapons, and possession of drugs and alcohol in the prison (*See* Dkt. # 1740-1). While Defendant may be taking some steps toward rehabilitation, it is well established that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason . . . ." that would warrant

a sentence reduction. U.S.S.G. § 1B1.13(d). *See United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that defendant's rehabilitation efforts alone did not constitute an extraordinary and compelling reason for his release). Rehabilitation may be considered with other circumstances in determining whether a reduction is warranted. *See* U.S.S.G. § 1B1.13(d). Here, Defendant has not established that other extraordinary and compelling reasons exist, as required by the statute. *Id.* Accordingly, the Court will not consider Defendant's rehabilitation efforts to support a sentence reduction.

### B. A reduction in Defendant's sentence is not warranted under U.S.S.G. § 1B1.13(b)(6).

The Court will now address Defendant's argument that his sentence is unusually long. Section 1B1.13(b)(6) applies when a defendant receives an unusually long sentence, the defendant has served at least ten years of that sentence, and a change in law has created a gross disparity between the sentence imposed and the sentence that would likely be imposed today. Defendant has served more than ten years of his sentence. Thus, the Court will analyze Defendant's argument in two parts: first, whether Defendant's sentence is unusually long, and second, whether any change in law has created a gross sentencing disparity warranting relief.

#### 1. Defendant's Sentence is Not Unusually Long

In support of his argument that his sentence is unusually long, Defendant first points to the fact that his sentence is "grossly disproportionate" compared to the sentences of his thirty-three co-defendants (Dkt. #1737 at p. 11). Defendant emphasizes that he is the only one of his co-defendants who is still incarcerated despite being the youngest person involved in the conspiracy and "one of the least culpable" (Dkt. #1737 at p. 2). Defendant was indeed the youngest conspirator; however, the Court has already found that he was not the "least culpable" (Dkt.

#1728 at p. 9–10). The Court previously articulated multiple reasons why Defendant received the longest sentence (Dkt. #1728 at p. 9–10). The Court will reemphasize those reasons here.

First, the Jury found Defendant guilty for his role in a conspiracy to possess and distribute a large quantity of cocaine—319 grams to be exact (Dkt. #1075 at p. 1). Second, in addition to the conviction for conspiracy to possess cocaine with the intent to distribute, the Jury also found Defendant guilty of possessing a firearm in furtherance of the underlying offense (Dkt. #1075 at p. 2). Third, Defendant had numerous guideline enhancements added because of his managerial role in the conspiracy, his recruitment and use of a minor, his extensive criminal record, and his conduct leading up to the trial (Dkt. #1161 at pp. 7–11). Furthermore, Defendant obstructed the investigation by assaulting a witness who was set to testify against him, attempted to pressure other witnesses to deny knowing him, and pressured those same witnesses to lie under oath and state that he had not attempted to sell them cocaine (Dkt. #1161 at p. 6). Fourth, unlike the majority of his co-defendants, Defendant elected to take the case to trial, thereby showing his refusal to assume responsibility for his actions (Dkt. #1161 at p. 6). *See United States v. Fernandez*, 104 F.4th 420, 428 (2d Cir. 2024) (quoting *Missouri v. Frye*, 566 U.S. 134, 143–44, (2012)) ("It is not 'extraordinary' (indeed, it should be expected) that a defendant who proceeds to trial and is convicted receives a longer sentence than his co-defendants who plead guilty to different crimes, accept responsibility, and assist the government by cooperating. The Supreme Court has observed that our 'system of pleas . . . often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial."). Defendant also argues that his sentence is grossly disproportionate to sentences imposed on individuals convicted of more serious crimes, suggesting that his punishment is excessive given the nature of the offense.

(Dkt. #1737 at p. 14). However, as previously discussed, Defendant's sentence includes numerous guideline enhancements, which explains the length of his sentence (Dkt. #1161 at pp. 7–11).

### 2.    There is no change in law producing a "gross disparity"

U.S.S.G. § 1B1.13(b)(6) also requires there be a "change in law producing a gross disparity between the sentence being served and the sentence likely to be imposed today." Put simply, Defendant must show that a change in the law has resulted in a significantly lower sentencing range today than the one originally applied to him. Defendant asserts that because § 404 of the First Step Act made the Fair Sentencing Act retroactive, he would not have "faced a maximum term of life imprisonment on count one" if he were convicted under 21 U.S.C. §§ 841(b)(1)(A)(iii) and 841 (b)(1)(B)(iii) (Dkt. #1737 at p. 19). To the contrary, Defendant's sentence as to Count 1 was at the low end of the guideline range (Dkt. #1161 at p. 15). Moreover, Defendant's sentence as to Count 2 was, and remains, the statutory minimum as determined by Congress (Dkt. #1161 at p. 15). Although, § 404 of the First Step Act made the Fair Sentencing Act retroactive, that change does not create a significant difference between the sentence Defendant is serving and the sentence he would likely receive if sentenced today. Furthermore, the Court retains discretion in considering arguments presented under the First Step Act. *See Concepcion v. United States*, 597 U.S. 481, 494 (2022) ("The only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution").

### III.    Defendant has not established that the 18 U.S.C. § 3553(a) factors warrant compassionate release

Lastly, even if Defendant's claims  were extraordinary and compelling, the sentencing factors under 18 U.S.C. § 3553(a) support denying Defendant's Motion. Defendant was convicted

of Conspiracy to Possess with Intent to Distribute more than fifty grams of cocaine base, along with 33 other defendants, (Dkt. #1075 at p. 1). Moreover, Defendant served in a managerial role in this conspiracy, even recruiting a minor to work for him (Dkt. #1161 at p. 7). Defendant was additionally convicted of possession of a firearm in relation to a drug trafficking crime (Dkt. #1161 at p. 8). Defendant's offense level, after all applicable enhancements, totaled 41 points (Dkt. #1161 at p. 26). When combined with his criminal history category of VI, the highest level possible, Defendant's guideline imprisonment range as to Count 1 was 360 months to 480 months (Dkt. #1161 at p. 15). Nonetheless, Defendant's sentence as to Count 1 was at the low end of the guideline range (Dkt. #1161 at p. 15).

Defendant asserts that his rehabilitation efforts should also be considered under this section, but his BOP records indicate poor conduct over the years (Dkt. #1740-1). Even if Defendant had made rehabilitative progress, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *See Jean*, 108 F.4th at 279. Defendant asserts that he does not pose a danger to society, but he produces no cognizable evidence other than the fact that he has not been disciplined in over two years (Dkt. #1745 at p. 7). Neither Defendant's "supportive family" who is "ready to embrace him upon his release," nor the letters supporting his release prove that would not pose a danger to society if released (Dkt. #1737 at p. 27).

Accordingly, after weighing the sentencing factors, the Court finds that granting Defendant's Motion would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for his offense, adequately deter criminal conduct, or protect the public. Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless on of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522,

526 (2011) (citing 18 U.S.C. § 3582(c)); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Here, Defendant did not meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i). Accordingly, the Court finds it appropriate to deny Defendant's Motion.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Dkt. # 1737) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 12th day of August, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE